THE ADELAIDE. THE COFFIN. THE M. A. LENNOX.

(District Court, E. D. New York. July 7, 1904.)

1. SHIPPING—INJURY TO BARGE BY CROWDING AGAINST DOCK.

A steamship *held* liable for breaking the guard rail of a barge, which was between herself and a dock, caused by pressing the barge against the dock, on the ground that proper care was not exercised in adjusting the booms so as to keep her off with the changing tide.

In Admiralty. Suit to recover for damage to barge.

Wilcox & Green, for libelant.
Convers & Kirlin, for respondent Hudson.
James J. Macklin, for the Adelaide.
Wing, Putnam & Burlingham, for the Lennox.

THOMAS, District Judge. The only question in this case is whether the steamship Westmeath was properly boomed off, so that within reasonable expectation she would not press the scow Buffalo against the dock, and cause the injury to the guard of the latter for which the libel was filed. The accident happened in 1897, and the evidence of witnesses as to what was said and done on the occasion is scrutinized with unusual care after such an interval. The correspondence after the event throws very little light upon the subject. Capt. Cherry, the libelant's superintendent, on September 20, 1897, wrote to the superintendent of the East Central Pier, where the accident occurred, but there is no suggestion of specific negligent acts or admissions which caused the injury. He says:

"By orders of your stevedore our barge Buffalo was placed between your pier and steamship Westmeath, and against the persistence of the captain of the barge. He warned the stevedore that it was unsafe to place the barge there. Placing said barge at that point caused considerable damage to her guards."

This letter was referred to Tiffany, the superintendent of the stevedoring company, who forwarded it to Barber & Co., the ship's agents, with his report indorsed thereon. He said that the captain of the barge

"made no objections until after the barge was jammed; then he claimed that it was no place for to put the barge"; and adds: "The damage was to the guard rail, and if the barge's rail had been in good condition it would have stood the strain. The wood was very rotten, and perfectly unsound." In October, 1897, Capt. Cherry wrote to Barber & Co., agents of the vessel, but his statements made no important addition to those in his former letter. Burrows, master of the Buffalo, upon the trial stated that no timbers or booms were used to keep the ship off. Morrisey, foreman of the stevedores of the Atlantic Stevedoring Company, Tiffany, the company's superintendent, and Jansen, one of the company's employés, all testify that the vessel was boomed off. Belton's evidence adds nothing in this regard. It is apparent that the evidence of the respondent that the booms were used is stronger in the number of witnesses and equal in quality to that of the libelant. Hence it is concluded that the booms were used. But, even so, it is probable that the booms were not suitably adjusted to keep the steamship off with the changing tide. Jansen testified:

"If a tugboat came and squeezed against the ship's side, it would squeeze her in up against the barge. Q. And the weight of the steamship against the barge would squeeze her up against the string piece? Is that right? A. Yes, that is right. Q. And that is what probably broke the guard? Is that your judgment? A. That is my judgment, yes."

It is true that more or less of the timbers to which the rail was fastened were rotten. Capt. Cherry told the entire truth as to that. But it is not believed that an ordinary pressure would have broken off so many of these timbers had the booms been properly readjusted to meet changing conditions. It was the duty of the vessel and those to whom it committed the management of affairs to see to it that the booms were readjusted as occasion demanded.

Pursuant to these views the libelant should have a decree against the respondent, who was the owner of $^{43}/_{64}$ of the vessel, and under the Dingley act of June 26, 1884, c. 121, § 18, 23 Stat. 57, 1 Supp. Rev. St. p. 443 [U. S. Comp. St. 1901, p. 2945], the decree against him must be limited to the proportion of the damage that his individual share of the vessel bears to the whole.